## J. E. SITTERLEY v. GRAY COMPANY, INC.[1]

April 9, 1937.

No. 30,958.

*Henderson & Flakne* and *Charles H. Halpern,* for appellant.

*Thompson, Hessian & Fletcher* and *John J. McKasy,* for respondent.

HOLT, JUSTICE.

Plaintiff publishes the trade journal *Importers Guide.* He solicited defendant to advertise therein. The journal is published on the first day of each calendar month. The issues published on January 1, May 1, and September 1 are in the English language; the issues of February 1, June 1, and October 1 in French; the issues of March 1, July 1, and November 1 in Spanish; and the issues

[1]Reported in 272 N. W. 387.

of April 1, August 1, and December 1 in Portuguese. When defendant was solicited as an advertiser plaintiff tendered a contract or printed proposal in the form of a letter or order addressed to himself. The defendant signed the same under the date of June 10, 1930. It reads:

"Dear Sir:

"Please insert one-half page advertisement in the Importers Guide commencing with the September edition, at the rate of $160.00 per insertion for each edition (payable on date of issue) and continuing until ordered discontinued by either party on three full calendar months' notice in writing by registered mail.

"When no instructions are given, previous advertisement may be used, and if no copy is furnished you are to supply it. All conditions are expressed in this contract."

To the left of defendant's signature, inclosed in a parallelogram, this is printed in small box type:

"Importers Guide is published in English, French, Spanish and Portuguese, one language edition each month, three editions in each language each year. All final closing dates (see other side) falling within the notice period are for account of advertiser, and advertisements carried on such closing dates will be published at advertiser's expense. All our rates are flat rates. Short rates are not applied in the event of cancellation. Sworn detailed statement of circulation is furnished with each language issue."

The reverse side of the instrument states what the *Importers Guide* is devoted to, the dates on which the journal is published each month, in what language, and final closing dates, together with advertising rates. On July 29, 1931, defendant sent written notice by air mail of discontinuance of the advertisement, of which plaintiff, under date of July 31, 1931, acknowledged receipt. Notwithstanding the expiration of three full calendar months by October 31, plaintiff published the advertisements in the issues of November 1 and December 1, 1931. For all previous issues defendant has paid, but it refused to pay for those published after October 31, and this

action was brought. The trial court found for defendant. Plaintiff appeals from the judgment entered after his motion for a new trial was denied.

The appeal of plaintiff is based upon this sentence found within the parallelogram mentioned, *viz.*: "All final closing dates (see other side) falling within the notice period are for account of advertiser, and advertisements carried on such closing dates will be published at advertiser's expense." It is to be noted that this small print is set off from the contract proper by a well defined parallelogram. There is no reference in what is printed above defendant's signature either to the printing in the parallelogram or to the back or reverse side of the letter. Neither the one nor the other ought properly be considered as part of the contract of defendant. 13 C. J. p. 278, § 78. In Sturtevant Co. v. Fireproof Film Co. 216 N. Y. 199, 203, 110 N. E. 440, 442, L. R. A. 1916D, 1069, it was said:

"When an offer, proposal or contract is expressed in clear and explicit terms, matter printed in small type at the top or bottom of the office stationery of the writer, where it is not easily seen, which is not in the body of the instrument or referred to therein, is not necessarily to be considered as a part of such offer, proposal or contract."

And see also Sturm v. Boker, 150 U. S. 312, 14 S. Ct. 99, 37 L. ed. 1093; Summers v. Hibbard & Co. 153 Ill. 102, 38 N. E. 899, 46 A. S. R. 872; R. J. Menz Lbr. Co. v. McNeeley & Co. 58 Wash. 223, 108 P. 621, 28 L.R.A.(N.S.) 1007. To the same effect see May Hosiery Mills v. G. C. Hall & Son, 77 Cal. App. 291, 246 P. 332; Augusta Factory v. Mente & Co. 132 Ga. 503, 64 S. E. 553; Rosenbaum Hardware Co. v. Paxton Lbr. Co. 124 Va. 346, 97 S. E. 784.

But, even assuming that the small print within the parallelogram is a part of the contract, it must be held that the ambiguous meaning of the sentence quoted therefrom cannot control or modify the plain stipulation that three months' notice in writing cancels or terminates the contract. On the "other side," referred to in the small print, there is nothing at all purporting to modify the can-

cellation provision on the contract. It merely defines "closing dates," by stating that the closing date of any issue or edition of the journal is the 20th day of the second month preceding the date of the issue. Moreover, we think the sentence itself by reference to the printing on the "other side" cannot be tortured into a meaning that there shall be an obligation on the part of the advertiser to pay for two editions published after the cancellation by written notice has taken effect, that is, for two editions published next after the expiration of the three full calendar months' notice of cancellation has been given and received. The contract was prepared and tendered by plaintiff, and ambiguities therein are not to be construed in his favor. Lucas v. Ganley Brothers, Inc. 166 Minn. 7, 206 N. W. 934. While we are of the opinion that there is nothing in the small print in the parallelogram and the "other side" which can modify or destroy the plain meaning of the cancellation provision in the contract proper, we think the most reasonable meaning of the sentence referred to is that, as long as the contract remains in force, the advertiser has the right to change the wording of his advertisement up to but not after the closing date named, which as to each issue or edition is the 20th day of the second month preceding the date of the issue. If it is not changed before such closing date, plaintiff could use the copy on hand. But it cannot mean that after cancellation has become effective plaintiff can publish the advertisement at defendant's expense.

The judgment is affirmed.